# United States District Court
# Northern District of Indiana

| | | |
|---|---|---|
| DEBRA D. PATZER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:08-CV-222 JVB |
| | ) | |
| | ) | |
| CITY OF ELKHART, | ) | |
| RICHARD MOORE in his official | ) | |
| capacity as Mayor of the City of Elkhart, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Plaintiff Debra Patzer sued her former employer, the City of Elkhart and Mayor Richard Moore, in the Elkhart, Indiana, Superior Court for firing her for political reasons and failing to pay her for her last day of work. Defendants filed a notice of removal to federal court, whereupon this Court assumed jurisdiction. Defendants moved for summary judgment, which the Court denied. Defendants moved for reconsideration of the denial (DE 43). For the reasons stated below, Defendants' motion for reconsideration and for summary judgment are granted; Plaintiff's state law claim for unpaid wages is remanded to the Elkhart Superior Court.

**A. Legal Standards**

Pursuant to Federal Rule of Civil Procedure 54(b), any order that does not dispose of all the claims as to all the parties may be revised at any time before the entry of a judgment adjudicating all claims as to all parties. The Court's order denying summary judgment is unquestionably such an interlocutory order.

A motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party supports its motion for summary judgment with affidavits or other materials, it thereby shifts to the non-moving party the burden of showing that an issue of material fact exists. *Kaszuk v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986).

Rule 56(e) specifies that once a properly supported motion for summary judgment is made, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts to establish that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). A court's role is not to evaluate the weight of the evidence, to judge the

credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249–50 (1986).

**B. Factual Background**

In June 2004, Plaintiff Debra Patzer responded to a classified ad and was hired, without meeting with then Mayor David Miller, a Republican, to serve as the Assistant Director for the Planning Department for the City of Elkhart. (Patzer Dep. at 22, 24.) Although she was not promoted, her title was changed to Planning Manager on January 1, 2006, as part of a restructuring. (Patzer Dep. at 27–28.) Throughout her employment with the City of Elkhart, Plaintiff reported to the director of the planning department, Mark Brinson, who reported directly to Mayor Miller. (Patzer Dep. at 23–24.) Brinson gave Plaintiff direction regarding which policies she needed to follow. (Patzer Dep. at 35–36.) He also conducted frequent departmental meetings in which Plaintiff participated by suggesting recommendations and goals for her department, which Brinson often approved. (Patzer Dep. at 35–36.) Plaintiff was a good employee, as evident from her performance evaluations and Mayor Miller's letter of recommendation. (Pl.'s Ex. 24.)

Plaintiff's official job description as Planning Manager, reporting to the Director of the Office of Planning & Development, was as follows:

JOB SUMMARY

- Responsible for identifying opportunities for collaboration in the activities of this division with other divisions and departments throughout the City that promote and

3

enhance effective, efficient and accountable operations.  Responsible for the development and implementation of the Comprehensive Land use Plan for the City.  Responsible for innovating and reforming planning and zoning process to promote more efficient case management resulting in effective and desirable results.  Responsible for facilitating the planning process with developers and community leaders to forge compromises that optimizes [sic] the benefits to the Elkhart community, as well as provides incentives to the business community.  Responsible for compliance with all local, state and federal laws, ordinances, rules and regulations relating to the City's obligation and authority to control land use for the ultimate public good.  Responsible for communicating planning and zoning policy to the general public through public presentations, print media, and other methods.

PRINCIPAL DUTIES AND RESPONSIBILITIES

- Researches and understands all pertinent local, state, and federal laws, ordinances, rules and regulations governing the planning (and ultimate development) of all land within the City of Elkhart corporate jurisdiction in accordance with appropriate and compatible uses, and ensures compliance.
- Researches and develops long term objectives, strategies and approaches to urban redevelopment revitalization, business incentives and economic impacts.
- Researches, develops and implements a comprehensive master land use plan process, including developing the plan for approval by elected officials and appointed boards, establishing development standards

for all land uses proposed, implementing the plan review and approval process, and coordinating the land use plans with all other affective [sic] departments and agencies.

- Initiates and conducts special studies relating to community improvement in conjunction with consultants and relevant community, state, and federal agencies.
- Advises and works with the City Common Council and top management to develop strategies and initiate projects for economic redevelopment in downtown and targeted neighborhoods.
- Establishes the planning and zoning standards through ordinance regulations that reflect concise implementation procedures, yet maintain reasonable flexibility for innovative and desirable proposals.
- Processes all planning and zoning activities through the respective Boards and Commissions, including but not limited to the City Common Council, the Planning and Zoning Commission, the Redevelopment Commission, Historic Preservation and Cultural Commission, and the Board of Zoning Appeals.
- Pursues housing and neighborhood redevelopment opportunities in conjunction with government and community partners.
- Prepares and implements processes for establishing special zoning districts to enhance development and redevelopment flexibility.
- Prepares and presents planning and zoning policy issues through public presentations before community and neighborhood groups and other organizations affected by the planning process.
- Complies [sic] and analyzes date [sic], including but not limited to, census/demographics, socioeconomic, housing, and employment date [sic], for the preparation of a variety of statistical and

    other evidentiary reports for promoting consistent implementation of the planning and zoning policy.
- Prepares and monitors annual budget for Planning and Zoning department.
- Uses a variety of laws, rules, regulations, and planning concepts to develop viable recommendations. Judgment is needed in adopting specific guidelines to situations with [sic] will generate zoning decisions.
- Has significant impact on decisions and recommendations for Plan Commission, Board of Zoning Appeals, City Council, and other agencies. Work involves decisions regarding selection of appropriate standards or ordinances. Periodic consultation with the Director is required. Errors may result in loss of time, unnecessary lawsuits, and embarrassment to the department and to the City.

OTHER DUTIES AND RESPONSIBILITIES

- Supervises professional staff
- Provides principal staff support to the Plan Commission and Board of Zoning Appeals.
- Researches zoning and planning policy.
- Prepares and assigns planning studies and inventories.
- Researches, writes, and presents staff recommendations to the Plan Commission and Board of Zoning Appeals.
- Prepares and assigns annexation fiscal plans.
- Assigns staff support to the Historic and Cultural Commission
- Attends Elkhart City Commission meetings as needed
- Supervises maintenance of zoning and base maps.
- Performs other duties as directed by the Director of the Office of Planning and Development

Def. Mem in Supp. of Summ. J., Ex. 5.

The job description became effective in January 2006, about a year and a half after Plaintiff was hired, and almost two years before the change in city administration that resulted in her termination. Plaintiff had looked at it to make sure that it was an accurate representation of what she was doing or might be asked to do. (Patzer Dep. at 62.)

Mayor Miller did not run for re-election in 2007. (Patzer Dep. at 57.) Despite personally knowing the Republican candidate, Jim Pettit, Plaintiff did not campaign for him or for the Democratic candidate, Richard Moore. (Patzer Dep. at 57–59.) Plaintiff was politically neutral in the 2007 mayoral election: she did not attend political functions or contribute to either campaign, nor did she voice an opinion as to whom she would like to win the election. Furthermore, because Plaintiff did not live in Elkhart, she did not vote for a mayoral candidate. (Patzer Dep. at 57–59.)

On November 6, 2007, Richard Moore was elected to serve as the Mayor of Elkhart. (Moore Aff. ¶ 2.) Shortly after winning the election, Mayor Moore determined that the City's government needed to be restructured. (Moore Aff. ¶ 3.) Under this reorganization, Mayor Moore eliminated the Planning and Development Department and created a new system in which department heads would report directly to him. (Moore Aff. ¶ 3, 8.) Moore sent letters to individuals previously classified as directors or managers, indicating that he would not be filling the positions of directors and encouraging them to apply for appointment as a Department head or Assistant Department head. (Moore Aff. ¶ 13.) Plaintiff applied for one of these positions and received a letter dated December 1, 2007, notifying her that her services would not be needed as of January 1, 2008. (Def.'s Ex.11.) Although the letter indicated that Mayor Moore believed his

administration needed a new approach to combat issues facing his new administration, Plaintiff was not provided with a specific explanation, either in the letter or verbally, as to why she was being let go. (Def.'s Ex. 11; Patzer Dep. at 78–80, 90.) As of September 14, 2009, Mayor Moore did not hire anyone to replace Plaintiff, nor did he intend to. (Moore's Aff. ¶ 8; Moore Dep. at 69.)

In the affidavit Mayor Moore submitted in support of Defendants' motion for summary judgment, he averred that his campaign was premised on the idea that the interests of the citizens of Elkhart should be the primary concern. (Moore Aff. ¶ 1.) One of his main campaign issues was the operation of a "Mega Shredder" by Sturgis Iron and Metal Company. (Moore Aff. ¶ 9.) The shredder made a lot of noise and caused damage throughout the City, leading to dozens of citizen complaints. (Moore Aff. ¶ 9.) Former Mayor Miller, unlike Mayor Moore, was a proponent of the Mega Shredder and encouraged his staff, including Plaintiff, to investigate citizen complaints and to work in good faith with Sturgis. (Patzer Dep. at 81, 91–92.) Mayor Moore attended meetings in which Plaintiff provided information and answered questions about Sturgis' operations. (Moore Aff. ¶ 9.) Because of this role and a letter Plaintiff wrote to Sturgis allegedly "tipping them off," he believed that Plaintiff was leading the charge for Sturgis and putting Sturgis' interests before those of the citizens of Elkhart. (Moore Aff. ¶ 9; Moore Dep. at 63.) As a result, and because of complaints he received from business owners who worked with Plaintiff regarding zoning and development issues, Mayor Moore felt Plaintiff was not a good fit for his administration because her approach was not open and flexible regarding citizens' concerns. (Moore Aff. ¶ 9–10.)

In any case, Mayor Moore decided to terminate Plaintiff without considering the legal

8

implications, and without viewing her performance evaluations or job description, or speaking to anyone about her capabilities. (Moore Dep. at 24–26, 68.) Furthermore, he indicated that Plaintiff's qualifications and work experience were not factors in his decision. Mayor Moore believed that the former mayor appointed Plaintiff and that she was subject to termination because of this; however, he did not investigate as to how she received her job. (Moore Dep. at 26.) Instead, he relied upon his assumption that the word "manager" in her title indicated that she was appointed. (Moore Dep. at 38, 58.) Mayor Moore believed that when a new mayor was elected, he had a duty to form a new administration, and that managers were an appropriate place for mayors to make these changes. (Moore Dep. at 23–24, 26, 59.)

Plaintiff sued Defendants City of Elkhart and Mayor Moore in his official capacity in the Elkhart Superior Court on April 24, 2008, pursuant to 42 U.S.C. § 1983, alleging that Defendants violated her First Amendment rights by terminating her for political reasons. Plaintiff's Complaint also alleges that Defendants failed to pay her wages, benefits, costs, and expenses for her last day of employment with the City in violation of Indiana Code § 22-2-5-1, *et. seq.* Defendants removed this case to this Court on May 8, 2008, and moved for summary judgment on September 14, 2009. They maintained that summary judgment is appropriate because Plaintiff cannot meet her burden of showing that political affiliation or activity was a substantial or motivating factor in her dismissal from city employment and because political affiliation was an appropriate job requirement for her position. Defendants also urged that naming Mayor Moore in his official capacity is redundant and that he should be dismissed. Defendants further maintained that Plaintiff's state law claim should be dismissed as she failed to exhaust administrative remedies. In their motion to reconsider, they stress that the undisputed

facts demonstrate that Plaintiff's job as Planning Manager was a policymaking position, entitling them to judgment as a matter of law on that issue.

**C. Discussion**

**(1)** *Applicable Law*

Suing a defendant in his official capacity is another way of pleading an action against an entity of which an officer is an agent. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 n.55 (1978). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucy v. Graham*, 473 U.S. 159, 166 (1985) (citing *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985)). Therefore, because Mayor Moore is sued in his official capacity only, the Court will treat him and the City of Elkhart as a single Defendant. *See Schmidling v. City of Chi.*, 1 F.3d 494 (7th Cir. 1993) (finding that Mayor Daley, who was sued in his official capacity, was properly dismissed because suing him was the same as a lawsuit against the City of Chicago).

Cities are liable only when a constitutional violation is caused by municipality policy or custom or when the violation was caused by a person with final policymaking authority. *See Latuszkin v. City of Chi.*, 250 F.3d 502, 504 (7th Cir. 2001) (citing *McCormick v. City of Chi.*, 230 F.3d 319, 323–24 (7th Cir. 2000)); *Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978)). Plaintiff alleges, and Defendant does not dispute, that Mayor Moore is the ultimate policymaker regarding the administration of the City government, including the hiring and firing of certain employees. As a

result, the City of Elkhart can be liable for Mayor Moore's decision to fire Plaintiff if it violated Plaintiff's constitutional rights.

"It is well established that hiring, firing, or transferring government employees based on political motivation violates the First Amendment, with certain exceptions for policymaking positions and for employees having a confidential relationship with a superior ." *Hall v. Babb*, 389 F.3d 758, 762 (7th Cir. 2004) (citations omitted). In order to establish politically motivated employment discrimination, "a plaintiff must show two things: first, that the plaintiff's conduct was constitutionally protected, and second, that the protected conduct was a substantial or motivating factor in the employment decision." *Id.* (citing *Simmons v. Chi. Bd. of Educ.*, 289 F.3d 488, 495 (7th Cir.2002); *Nelms v. Modisett*, 153 F.3d 815, 818 (7th Cir.1998)). However, a public employee may be dismissed on the basis of her political affiliation where the nature of the job makes political loyalty a valid qualification for the effective performance of the position. *Allen v. Martin*, 460 F.3d 939, 944 (7th Cir. 2006) (citations omitted). Such political loyalty may be demanded where the employee's position involves policymaking and thus the exercise of political judgment. *Id.* If a position "authorizes, either directly or indirectly, meaningful input into government decisionmaking on issues where there is room for principled disagreement on goals or their implementation," it is a policymaking position. *Id.* (citations and internal quotations omitted).

In determining whether a particular position is one for which political affiliation is an appropriate criterion, a court must focus on the inherent powers of the office as presented in the official job description. *Id.* (citations omitted). Only where the plaintiff demonstrates some systematic unreliability may a court look beyond the job description. *Id.* She must provide

11

specific facts demonstrating that the description is unreliable and unauthoritative, such as evidence that the description has been manipulated in some manner by officials looking to expand their political power. *Id.* If no basis is presented for finding the official job description systemically unreliable, an elected official may rely on it, even if a plaintiff is prepared to testify that the job description does not actually describe what she does. *Riley v. Blagojevich*, 425 F.3d 357, 360 (7th Cir. 2005).

**(2)** *Analysis*

Plaintiff asserts in her response to the motion to reconsider that whether or not she was a policymaker as the City's Planning Manger is a question of fact. However, as explained above, if it has not been shown to be unreliable, an individual's job description is the critical factor in determining whether the position is protected from political firing and the inquiry presents a question of law for the Court to determine. *Id* at 361 (citations omitted).

When asked at her deposition whether her job description was accurate, Plaintiff stated:

> The only thing on here that I was not asked to do is under Principal Duties and Responsibilities it says, "Advises and works with the City Common Council and top management to develop strategies and initiate projects." I did work with the director, but I never was involved in a workshop with the council.

(Patzer Dep. at 62.) In other words, she worked with top management to develop strategies and initiate projects, but did not work with the Common Council directly in that capacity. She did, however, attend Council meetings to make presentations and answer Council members' questions. (*Id.* at 63.)

This one discrepancy between what Plaintiff actually did and her job description falls far short of showing that the job description is systemically unreliable. The description was not altered by the incoming Moore administration, so there can be no charge that it was manipulated to expand the new mayor's political power to appoint loyalists. Accordingly, the official job description is "the pivot on which the case turns," *Riley*, 425 F.3d at 361, making the issue of whether it describes a constitutionally protected position a question of law for the Court to decide.

The description reveals that the Planning Manager, among many other things, is responsible for developing and advising the city administration on land use policy, and serves as the administration's spokesperson on such matters to potential developers, the Common Council, and the general public. Even though the holder of the position does not have final decisionmaking authority, that person is called on to give meaningful input on government decisionmaking with regard to land use policy. Moreover, land use policy is without question a matter on which there is room for principled disagreement on goals or their implementation. What is more, the administration's public spokesperson needs to be in tune with its political goals. Accordingly, political loyalty is a valid qualification for the effective performance of the position of Planning Manager and the holder may be dismissed on the basis of political affiliation.

Because the Court has determined that Plaintiff's job as Planning Manager is not protected by the First Amendment, it does not reach the issue of whether she has established a prima facie case of political firing.

Having found that Defendant is entitled to judgment as a matter of law on Plaintiff's federal claim, this Court has discretion whether to address Plaintiff's state law claim for unpaid wages. *Payne for Hicks v. Churchich*, 161 F.3d 1030, 1043 (7th Cir. 1998) (citations omitted). "When the district court dismisses all federal claims before trial, the usual and preferred course is to remand the state claims to the state court unless there are countervailing considerations." *Id.* Therefore, Plaintiff's remaining state law claim is remanded to the Elkhart Superior Court.

**D. Conclusion**

The Defendants' motion for reconsideration (DE 43) and motion for summary judgment (DE 23) are GRANTED. Plaintiff's state law claim for unpaid wages is REMANDED to the Elkhart Superior Court.

SO ORDERED on October 12, 2010.

s/ Joseph S. Van Bokkelen  
Joseph S. Van Bokkelen  
United States District Judge  
Hammond Division